# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND    )
ETHICS IN WASHINGTON    )
1400 Eye Street, N.W., Suite 450    )
Washington, DC 20005    )
    )
    Plaintiff,    )
    )    Case No. 1:07CV00620-RMC
    v.    )
    )
CENTRAL INTELLIGENCE AGENCY    )
Washington, DC 20505    )
    )
    Defendant.    )
_____)

## DEFENDANT'S MOTION FOR *OPEN AMERICA* STAY

Ignoring the reality of the demands on the Central Intelligence Agency's ("CIA")

Freedom of Information Act ("FOIA") office, Plaintiff Citizens for Responsibility and Ethics in

Washington ("Plaintiff") complains that the CIA has not completed processing its February 15,

2007 FOIA request.  Plaintiff's rush to court is based not on any compelling need requiring

expedited processing of its FOIA request but Plaintiff's insistence on strict adherence to statutory

language affording agencies only twenty working days to process FOIA requests.  *See* 5. U.S.C. §

552(a)(6)(A)(i).  Such adherence is unwarranted where, as here, the agency has a backlog of

FOIA requests but is making reasonable progress in reducing that backlog.  The FOIA includes a

safety valve (i.e., an *Open America* stay) that allows such an agency additional time to process a

plaintiff's FOIA request while the Court retains jurisdiction over the action.  *See* 5 U.S.C. §

552(a)(6)(C).  Defendant now invokes that safety valve and respectfully requests that the Court

stay this action until November 1, 2007 to allow sufficient time for the CIA to process Plaintiff's

FOIA request.

## FOIA'S TIME-LIMIT PROVISIONS

Upon receiving a FOIA request, an agency "shall determine within 20 days . . . whether to comply with such request" and "shall immediately notify the [requester] . . . of such determination and the reasons therefor, and of the right of such person to appeal to the head of the agency." 5 U.S.C. § 552(a)(6)(A)(i). The agency must process any appeal of its determination within twenty working days. *See* 5 U.S.C. § 552(a)(6)(A)(ii). In unusual circumstances, however, these time limits may be extended by written notice to the requester. *See* 5 U.S.C. § 552(a)(6)(B)(i).

If an agency fails to comply with the statutory time limits, the requester "shall be deemed to have exhausted his administrative remedies" and may file suit in federal district court. *See* 5 U.S.C. § 552(a)(6)(C)(i). The federal district court, while retaining jurisdiction over the action, may "allow the agency additional time to complete its review of the records" upon a showing that "exceptional circumstances exist" and that "the agency is exercising due diligence in responding to the request." 5 U.S.C. § 552(a)(6)(C)(i). This provision "was put in as a safety valve" in recognition that "the rigid limits of subparagraphs (A) and (B) might prove unworkable." *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 610 (D.C. Cir. 1976).

As used here, the term "exceptional circumstances"

> does not include a delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests.

> Refusal by a person to reasonably modify the scope of a request or arrange an alternative time frame for processing a request (or a modified request) . . . after being given an opportunity to do so by the agency to whom the person made the request shall be considered as a factor in determining whether exceptional circumstances exist for purposes of this subparagraph.

2

5 U.S.C. § 552(a)(6)(C)(ii), (iii).

## STATEMENT OF FACTS

On February 15, 2007, Plaintiff submitted a FOIA request to the CIA's Information and Privacy Coordinator. Compl. ¶ 16. That request seeks "any and all documents dating from July 6, 2003, to the present of communications between the White House and the CIA regarding Valerie Plame Wilson and/or Joseph C. Wilson." Compl. Ex. A. Plaintiff asked to be informed if the CIA "fores[aw] any problems in releasing fully the requested records within the twenty-day period." Compl. Ex. A. However, Plaintiff "never requested that the CIA expedite the processing of its FOIA request." Compl. ¶ 18.

By letter dated February 27, 2007, the CIA Information and Privacy Coordinator Scott Koch acknowledged receipt of Plaintiff's FOIA request. Compl. Ex. B. Mr. Koch explained that the CIA "handle[s] all requests in the order [] receive[d]" (i.e., "first-in, first-out" basis) and "make[s] exceptions to this rule only when a requester establishes a compelling need." Compl. Ex. B. A compelling need exists "1) when the matter involves an imminent threat to the life or physical safety of an individual, or 2) when a person primarily engaged in disseminating information makes the request and the information is relevant to a subject of public urgency concerning an actual or alleged Federal government activity." Compl. Ex. B. Mr. Koch informed Plaintiff that its request did not satisfy those criteria and therefore would be processed in the order received. Compl. Ex. B.

By letter dated March 13, 2007, the CIA accepted Plaintiff's FOIA request and explained the likely timetable for its processing.  Specifically, the letter explained that

> The large number of FOIA requests CIA receives has created unavoidable delays making it unlikely that we can respond within the 20 working days the FOIA requires.  You have the right to consider our honest appraisal as a denial of your request and you may appeal to the Agency Release Panel.  A more practical approach would permit us to continue processing your request and respond to you as soon as we can.  You will retain your appeal rights and, once you receive the results of our search, can appeal at that time if you wish.  *We will proceed on that basis unless you object.*

Declaration of Scott Koch ("Koch Decl.") Ex. E (emphasis added), attached hereto.  Plaintiff never contacted Mr. Koch's office to discuss that more practical approach.  *See* Koch Decl. ¶ 33.  Plaintiff also did not appeal the agency's decision to the Agency Release Panel.  *See* Koch Decl. ¶ 33.

On April 2, 2007, Plaintiff filed the instant action alleging that the CIA had violated the FOIA by "failing to release" the requested records.  Compl. ¶ 2[3].

## ARGUMENT

This Circuit has recognized that in fixing rigid time limits for processing FOIA requests and affording requesters the right to bring suit when those time limits are not met, Congress did not intend "to grant an automatic preference by the mere action of filing a case in United States district court."  *Open America*, 547 F.2d at 615.  That, however, is precisely the result that Plaintiff urges here.  Although informed that a backlog of FOIA requests would prevent the CIA from processing Plaintiff's FOIA request within twenty working days and encouraged to arrange an alternative timetable for that processing, Plaintiff filed this action demanding an immediate response to its FOIA request.  The law, however, does not require the CIA to move Plaintiff to

the head of the line.  *See id.*  Rather, the CIA's "good faith effort and due diligence . . . to comply

with all lawful demands under the Freedom of Information Act in as short a time as is possible

by assigning all requests on a first-in, first-out basis . . . is compliance with the Act."  *Id.* at 616.

In keeping with that view, FOIA provides that "[i]f the Government can show exceptional

circumstances exist and that the agency is exercising due diligence in responding to the request,

the court may retain jurisdiction and allow the agency additional time to complete its review of

the records."  5 U.S.C. 552(a)(6)(C)(i).  The CIA can demonstrate such circumstances and

therefore requests that the Court stay this action until November 1, 2007 to allow the agency

sufficient time to complete its processing of Plaintiff's FOIA request.[1]

## I.    THE CIA CAN DEMONSTRATE THAT EXCEPTIONAL CIRCUMSTANCES WARRANT THAT IT HAVE ADDITIONAL TIME TO PROCESS PLAINTIFF'S FOIA REQUEST.

Exceptional circumstances require that the CIA have additional time to process Plaintiff's

February 15, 2007 FOIA request.  FOIA makes clear that "exceptional circumstances" include "a

delay that results from a predictable agency workload of requests . . . [where] the agency

demonstrates reasonable progress in reducing its backlog of pending requests."  5 U.S.C.

552(a)(6)(C)(ii).  Courts in this Circuit have interpreted that provision as "excusing any delays

encountered in responding to a request as long as the agencies are making a good faith effort and

exercising due diligence in processing the requests on a first-in first-out basis."  *Kuffel v. United

States Bureau of Prisons*, 882 F. Supp. 1116, 1127 (D.D.C. 1995); *see also Appleton v. Federal*

---

[1]  This Court alternatively may refrain from ruling on this motion and allow the CIA time to complete its processing of Plaintiff's FOIA request.  *See Oglesby v. Department of Army*, 920 F.2d 57, 64 (D.C. Cir. 1990) ("Frequently, if the agency is working diligently, but exceptional circumstances have prevented it from responding on time, the court will refrain from ruling on the request itself and allow the agency to complete its determination.").

*Drug Admin.*, 254 F. Supp. 2d 6, 9 (D.D.C. 2003) (same); *Jimenez v. Federal Bureau of Investigation*, 938 F. Supp. 21, 31 (D.D.C. 1996) (same).

As demonstrated by the attached declaration of Scott Koch, CIA's Information and Privacy Coordinator, the CIA is making reasonable efforts and exercising due diligence in processing its backlog of FOIA requests. "When considering a request for an *Open America* stay, '[a]gency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims . . . .'" *Electronic Frontier Found. v. Department of Justice*, 2007 WL 1334973, at *4 (D.D.C., May 7, 2007). Applying that presumption here, the Court should conclude that the CIA has demonstrated exceptional circumstances.

## A.    The CIA Has a Substantial Backlog of FOIA Requests That the Agency Has Made Reasonable Efforts to Reduce.

As explained to Plaintiff by letter of February 27, 2007, the CIA processes FOIA requests on a first-in, first-out basis. *See* Koch Decl. ¶ 31; *see also* Koch Decl. ¶ 22. The agency also uses two tracks for processing requests. The majority of requests are on the first track for "complex" requests because they "have to be tasked to one or more CIA directorates for search and review."[2]  *See* Koch Decl. ¶ 22. The second track is for requests that "concern previously requested information," "information previously reviewed, declassified and released," or "information the existence of which would be a classified fact." *See* Koch Decl. ¶ 22. Certain popular collections of agency records are maintained on the CIA's website www.foia.ucia.gov. *See* Koch Decl. ¶ 25. Despite such efficiency measures, the CIA has a backlog of FOIA requests.

_____

[2]  The decentralization of the CIA's records is critical to the agency's counterintelligence measures. Records are maintained in four directorates: the National Clandestine Service, the Directorates of Intelligence, Science & Technology, and Support and independent offices that report directly to the CIA Director, collectively know as the D/CIA area. *See* Koch Decl. ¶ 7.

*See* Koch Decl. ¶¶ 35 & 37.

The CIA, however, historically has reduced its backlog each year in the past decade. *See* Koch Decl. ¶ 24 & Ex. A. Over the period 2000 - 2002, the CIA was the only agency that had "consistently decreased the number of requests in its backlog of pending requests." *See* Koch Decl. ¶ 27. During Fiscal Years 2003 through 2005, the CIA was one of two agencies with "processing rates above 100 percent in all three years, meaning that each made continued progress in reducing their number of pending cases." *See* Koch Decl. ¶ 28 & Ex. B. In addition to reducing the number of cases in its backlog, the CIA has reduced the median time that a FOIA request remains pending. At the end of Fiscal Year 2001, "the median number of days pending was 605 days for FOIA requests." *See* Koch Decl. ¶ 29. Three years later, that figure was down to 349 days. *See* Koch Decl. ¶ 29. At the end of Fiscal Year 2006, "the median days of pendency for the 896 FOIA/PA cases carried over into FY 2007 was 234." *See* Koch Decl. ¶ 29.

When Plaintiff's February 15, 2007 FOIA request was submitted to the agency, the number of FOIA requests in various stages of processing had grown to 907. *See* Koch Decl. ¶ 35. At present, however, there are only 573 FOIA requests ahead of Plaintiff's for processing. *See* Koch Decl. ¶ 35. The CIA's best estimate is that by October 2007, it will complete processing Plaintiff's request. *See* Koch Decl. ¶ 37. A stay of this action to allow the CIA to process Plaintiff's request on that timetable is therefore warranted.

**B.      The CIA's Review for Classified Information Contributes to Its Backlog and Need for Additional Time to Process Plaintiff's Request.**

The significant resources that the CIA devotes to declassification and review of classified information contribute to the exceptional circumstances necessitating a stay of this action.  *See* Koch Decl. ¶ 20 (explaining one reason for the CIA's backlog as "the process of responding to FOIA and other declassification review requests in a manner which avoids inadvertent disclosure of classified information").  Courts have recognized that the quantity of classified materials and the devotion of resources to declassification reviews "may be a basis for finding exceptional circumstances."  *Center for Public Integrity v. United States Dept. of State*, 2006 WL 1073066, at * 2 (D.D.C., Apr. 24, 2006) (noting that "other circumstances in addition to FOIA request backlogs may be a basis for finding exceptional circumstances, including 'resources being devoted to the declassification of classified materials of public interest'"); *Electronic Frontier*, 2007 WL 1334973, at *4 (concluding that FOIA's legislative history "clearly contemplate[s] that other circumstances, such as . . . the amount of classified material . . . [and] the resources being devoted to the declassification of classified material of public interest . . . are relevant to the courts' determination as to whether exceptional circumstances exist").  These considerations compel the conclusion that such circumstances are present here.

Because the overwhelming majority of the CIA's withholdings under FOIA are "based on FOIA Exemptions (b)(1) and (b)(3),"[3] the CIA must give "the utmost care" to ensure that in responding to FOIA requests, the agency does not "reveal information about intelligence collection, sources, methods, or capabilities and thereby . . . damage this country's national security." *See* Koch Decl. ¶ 18. Records that are determined responsive to a FOIA request are therefore reviewed "line-by-line to identify any information which is classified, pertains to intelligence sources or methods, or is otherwise exempt under the FOIA." *See* Koch Decl. ¶ 13. This "need to protect intelligence sources and methods, renders [the CIA's] record searches complex and information reviews multiple and exacting." *See* Koch Decl. ¶ 17. In an effort to improve its processing of FOIA requests, the CIA has "increasingly focused" on making "popular collections" and "frequently requested documents" available on the agency's website. *See* Koch Decl. ¶ 25. Although that initiative over time is expected to result in a decline in FOIA requests, that declassification effort and the ordinary processing of FOIA requests has resulted in a backlog that necessitates the additional time to process Plaintiff's FOIA request.

---

[3] FOIA exemption (b)(1) and (b)(3), respectively, protect from disclosure information "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and . . . are in fact properly classified pursuant to such Executive order" and information "specifically exempted from disclosure by statute . . . provided that such statute [] requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or [] establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(1), (3).

II.    **PLAINTIFF'S CONDUCT SUPPORTS GRANTING THE CIA THE ADDITIONAL TIME REQUESTED.**

Courts have considered the plaintiff's conduct relevant to the determination of whether to grant a stay. *See* 5 U.S.C. 552(a)(6)(C)(iii) (plaintiff's refusal to modify request or arrange alternative time frame are relevant "factor[s] in determining whether exceptional circumstances exist"); *Jimenez*, 938 F. Supp. at 32 (plaintiff's need for the information requested is relevant to whether a stay is appropriate). Here, such consideration heavily supports granting the CIA an additional four months to process Plaintiff's FOIA request.

A.    **Plaintiff Does Not Have an Urgent Need for the Documents Requested.**

Plaintiff cannot overcome the CIA's demonstration of exceptional circumstances based on Plaintiff's need for the information requested. Notwithstanding an agency's demonstration of exceptional circumstances, a "stay is not appropriate where the request is necessary and urgent." *Jimenez*, 938 F. Supp. at 31. However, where as here, the plaintiff cannot demonstrate "urgent need," "plaintiff must wait his turn in having the requested documents processed and disclosed." *Id.* at 32; *see also Edmond v. United States Attorney*, 959 F. Supp. 1, 4 (D.D.C. 1997) (same); *Ohaegbu v. Federal Bureau of Investigation*, 936 F. Supp. 7, 9 (D.D.C. 1996) (same); *see also Open America*, 547 F.2d at 615 (noting that "[i]f everyone could go to court when his request had not been processed within thirty days, and by filing a court action automatically go to the head of the line at the agency, we would soon have a listing based on priority in filing lawsuits").

Plaintiff has disavowed any urgent need for the requested "communications between the White House and the CIA regarding Valerie Plame Wilson and/or Joseph C. Wilson." *See* Compl. ¶ 18 (noting that "CREW never requested that the CIA expedite the processing of its

10

FOIA request"). The CIA also independently determined that Plaintiff's request did not present a

"compelling need" for which the agency would make an exception to its "first-in, first-out" rule

for processing FOIA requests. *See* Compl. Ex. B. Plaintiff's request accordingly is being

handled in the order received. At the time that Plaintiff's request was submitted, the CIA "had

over 907 FOIA requests in various stages of processing[, of which ] approximately 573 currently

remain ahead of [P]laintiff's request in the complex queue." *See* Koch Decl. ¶ 35. "Based upon

the request, the manner and level of the records search, the nature of potentially responsive

documents, and the careful, multi-step review the CIA must conduct to prevent the inadvertent

release of classified national security or other exempt information, and relative placement in the

processing queue, [the CIA's] best estimate is that CIA will be able to complete processing

[Plaintiff's] request by October 2007."[4] *See* Koch Decl. ¶ 37. Given the absence of a compelling

need, Plaintiff should be required to wait until then for its request to be processed.

---

[4] Plaintiff has suggested that the CIA should not require additional time to process its FOIA request because it seeks a "discrete" set of records. *See* Joint Status Report (filed June 14, 2007) ("Plaintiff believes that given the discrete topic of its FOIA request – 'communications between the White House and the CIA regarding Valerie Plame Wilson and/or Joseph Wilson' – that a stay would be inappropriate and would simply delay the processing of its FOIA request."). That belief, however, misapprehends the work involved in processing FOIA requests and ignores the CIA's FOIA backlog. Plaintiff's request was assigned to the CIA's complex track because it "entails records searches within components of the Directorate of Intelligence, the independent offices known as the D/CIA area, and the National Clandestine Service (formerly the Directorate of Operations) as well as Information Management Services." *See* Koch Decl. ¶ 23; *see also* Koch Decl. ¶¶ 7-9 (describing the CIA's decentralized and compartmentalized records system). There are presently 573 requests ahead of Plaintiff's in the CIA's complex queue. *See* Koch Decl. ¶ 35.

**B.     Plaintiff's Refusal to Arrange an Alternative Timetable for the Processing of Its Request Supports a Stay.**

In determining whether a stay is warranted, this Court should consider Plaintiff's refusal to arrange an alternative timetable for the processing of its request.  FOIA expressly provides that "[r]efusal by a person to reasonably modify the scope of a request or arrange an alternative time frame for processing a request (or a modified request) . . . after being given an opportunity to do so by the agency to whom the person made the request shall be considered as a factor in determining whether exceptional circumstances exist."  5 U.S.C. 552(a)(6)(C)(iii).  That consideration heavily supports granting a stay here.

By letter dated March 13, 2007, the CIA informed Plaintiff that it was "unlikely that we can respond within the 20 working days the FOIA requires."  *See* Koch Decl. ¶ 32 & Ex. E.  The CIA explained that although Plaintiff could appeal to the Agency Release Panel, "[a] more practical approach would permit us to continue processing your request and respond to you as soon as we can."  *See* Koch Decl. Ex. E.  Plaintiff was further advised that the CIA "w[ould] proceed on that basis *unless you object*."  *See* Koch Decl. Ex. E (emphasis added).  Plaintiff never communicated its objection to the CIA's FOIA office, never proposed an alternative time table for the processing of its request, and never appealed to the Agency Release Panel.  *See* Koch Decl. ¶ 33.  Instead, Plaintiff filed the instant action seeking to jump ahead of all of the other FOIA requests in the CIA's backlog.  That conduct should contribute to this Court's finding of exceptional circumstances warranting a stay.

12

III.    **THE CIA'S REQUEST TO STAY THIS ACTION UNTIL NOVEMBER 1, 2007 IS
REASONABLE.**

The CIA's request to stay this action for four months is substantially less than the length

of stays courts have granted under similar circumstances.  *See, e.g., Ohaegbu*, 936 F. Supp. at 7

(granting one-year stay from date of court's order); *Jimenez*, 938 F. Supp. at 21 (granting four-

year stay); *Williams v. United States*, 932 F. Supp. 354 (D.D.C. 1996) (granting agency over a

year to process plaintiff's FOIA request).  A stay of this action until November 1, 2007 is

therefore appropriate.

**CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court grant this

motion and stay this action until November 1, 2007 to allow the CIA sufficient time to process

Plaintiff's FOIA request.

Dated: July 16, 2007                          Respectfully submitted,

                                              PETER D. KEISLER
                                              Assistant Attorney General,
                                              Civil Division

                                              JEFFREY A. TAYLOR
                                              United States Attorney

                                              JOHN R. TYLER
                                              Senior Trial Counsel
                                              Federal Programs Branch

                                              ____/s/ Jacqueline Coleman Snead____
                                              JACQUELINE COLEMAN SNEAD
                                              (D.C. Bar No. 459548)
                                              Trial Attorney
                                              United States Department of Justice
                                              Civil Division, Federal Programs Branch
                                              20 Massachusetts Avenue N.W., Room 7214

13

Washington, D.C.  20530
Tel.: (202) 514-3418
Fax: (202) 616-8470
Email: jacqueline.snead@usdoj.gov

**Attorneys for the Central Intelligence Agency**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON<br>1400 Eye Street, N.W., Suite 450<br>Washington, DC 20005<br><br>     Plaintiff,<br><br>     v.<br><br>CENTRAL INTELLIGENCE AGENCY<br>Washington, DC 20505<br><br>     Defendant. | Case No. 1:07CV00620-RMC |

## PROPOSED ORDER

Upon consideration of Defendant's Motion for *Open America* Stay, the opposition thereto, and the complete record in this action, it is hereby

ORDERED that Defendant's motion is granted; and

FURTHER ORDERED that this action is stayed until November 1, 2007 to allow Defendant additional time to process Plaintiff's FOIA request. By no later than November 2, 2007, the parties are ordered to file a Joint Report on the status of Plaintiff's FOIA request and the need for further proceedings in this action.

IT IS SO ORDERED.

_____
ROSEMARY M. COLLYER
United States District Judge

**CERTIFICATE OF SERVICE**

I hereby certify that on July 16, 2007, a true and correct copy of the foregoing

Defendant's Motion for *Open America* Stay was electronically filed through the U.S. District

Court for the District of Columbia Electronic Document Filing System (ECF) and that the

document is available for viewing on that system.


     /s/ Jacqueline Coleman Snead
JACQUELINE COLEMAN SNEAD

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND )
ETHICS IN WASHINGTON )
)
           Plaintiff, )
)
)
   v. )  Case No. 1:07CV00620-RMC
)
CENTRAL INTELLIGENCE AGENCY )
)
           Defendant. )
_____)

**DECLARATION OF SCOTT A. KOCH**
**CHIEF, PUBLIC INFORMATION PROGRAMS DIVISION**
**CENTRAL INTELLIGENCE AGENCY**

I, SCOTT A. KOCH, hereby declare and say:

1. I am the Chief, Public Information Programs Division (PIPD), Office of the Chief Information Officer, Central Intelligence Agency (CIA). I am also the CIA Information and Privacy Coordinator (Coordinator). I have held these positions since 9 August 2004.

2. I have served with the United States Government for approximately sixteen years and, in addition to my current positions, have held other supervisory positions with the CIA in the fields of records management and information review and release.

3.   In my capacities as Chief of PIPD/IMS and Coordinator, I am responsible for managing the Freedom of Information Act (FOIA), Privacy Act, and Executive Order 12958 Mandatory Declassification Review programs in the CIA.   These responsibilities include directing searches of CIA records systems pursuant to public requests for records under these programs, and coordinating the reviews of any records retrieved in such searches.   These review processes include undertaking any intra-agency and inter-agency coordination and referrals necessary in light of the information found in responsive records.

4.   As part of my official duties, I ensure that the CIA administratively processes FOIA and Privacy Act requests, including the search, retrieval, analysis, review, redaction, and release of documents, in accordance with the law and as efficiently as possible with the personnel and resources available.

5.   Through the exercise of my official duties, I am familiar with plaintiff's request for information that is the subject of this civil action.   I make the following statements based upon my personal knowledge and the information made available to me in my official capacity.

2

6. The purpose of this declaration is to provide a description of the CIA's process for responding to FOIA/PA requests and to explain the CIA's need for a reasonable adequate time to process the request. I will include in my explanation the additional administrative burdens imposed by the nature of both the records systems involved and the information at issue, the necessity of referring records to various CIA components as well as to other agencies to ensure that no classified information, intelligence sources and methods, or otherwise exempt information is inadvertently disclosed, and the status of plaintiff's request vis-à-vis other pending FOIA requests.

I.  **CIA RECORDS SYSTEMS**

7. Any intelligence or security agency continually faces the risk that there may be a spy within its ranks or that it may be subject to hostile penetration. Prudence dictates that an agency take appropriate counterintelligence and security precautions to minimize the potential damage to national security that could result from a spy in the agency's midst or the compromise of its information systems by technical means. The CIA implements this policy by decentralizing and compartmenting its records systems. Records within the CIA are maintained by

3

the National Clandestine Service, the Directorate of
Intelligence, the Directorate of Science & Technology, the
Directorate of Support, and the independent offices which
report directly to the Director, CIA, collectively known as
the D/CIA area.

8.   Another way the CIA seeks to minimize such damage
is strictly to limit the amount of information to which any
particular employee has access.  The CIA limits employee
access to information by employing a "need-to-know" policy,
which provides that an employee has access only to that
information required to perform the employee's duties.

9.   While the counterintelligence advantage of
decentralization and compartmentation are obvious, one
disadvantage is equally obvious:  inherent inefficiencies
created in the records search and retrieval processes.
These inefficiencies affect not only the day-to-day
activities of CIA employees trying to perform their
mission, but also the process of responding to FOIA/Privacy
Act requests.

II.   **PROCESSING OF FOIA/PRIVACY ACT REQUESTS**

10.   The CIA Information and Privacy Coordinator, in
the office of Information Management Services, is the
initial reception point for all FOIA/Privacy Act requests.
Under the Coordinator's direction and supervision, FOIA

4

case officers review all incoming requests and address any administrative issues, such as the payment of applicable fees, requests for fee waivers or expedited treatment, and determine whether the request reasonably describes the information sought.

11.    Experienced information management professionals in PIPD analyze each request and determine which CIA components might reasonably be expected to possess records responsive to a particular request.  PIPD then tasks the request to each relevant directorate.  Frequently, PIPD tasks the request to multiple directorates.  Because CIA's records systems are decentralized and compartmented, each directorate must then devise its own search strategy, which includes identifying which of its components and records systems to search as well as what search tools, indices, and terms to employ.  The information management professionals in each component conducting FOIA/Privacy Act searches are the same professionals searching records to support the component's daily intelligence mission.

12.    When a component locates potentially responsive documents, officers must review them to determine whether they are in fact responsive to the request.  Because of the nature of a particular records system, or the search tools, indices, or terms employed, a search may locate many

5

documents that are not responsive to the request. In fact, it is not unusual for the number of non-responsive documents retrieved to far exceed the number of responsive documents.

13. The component must then carefully review those records that are responsive line-by-line to identify any information which is classified, pertains to intelligence sources or methods, or is otherwise exempt under the FOIA, and to ensure that nonexempt information is released if it is reasonably segregable. As part of this process, the reviewers must further determine whether information identified as classified still requires protection in the interests of national security or is such that it can be declassified and released. Thus, in evaluating responsive documents, officers must identify and segregate exempt information to avoid the inadvertent disclosure of classified information or compromising intelligence sources and methods. The process is laborious and time consuming.

14. In the course of reviewing documents for exempt information and segregability, a component frequently identifies information that it must coordinate with or refer to another CIA component or another agency because the other component or agency originated the information or otherwise has an equity in it. This coordination and

referral process itself can be quite time-consuming because other components and agencies have their own mission and FOIA/Privacy Act priorities.

15. When all of the components (and agencies, if information is in coordination) complete their respective reviews, professionals in my office incorporate all of their recommendations regarding exemption, segregation, and release. My office then conducts a review from a corporate perspective on behalf of CIA. In this review, we resolve conflicting recommendations, ensure that the release or withholding determinations comply with law, produce the integrated final record copy of each document, and respond to the requestor.

16. During the corporate review, we may make significant changes to initial decisions releasing or withholding information. In response to a broad FOIA/Privacy Act request, the searches may locate many documents in many components. When considered individually, a particular document may not indicate on its face that it contains exempt information. Nevertheless, when reviewers consider all responsive documents in total, it frequently becomes apparent that, considered collectively, the documents reveal information exempt from release. For this reason, we cannot make final release

determinations with respect to any particular document until we review all responsive documents.

17.   Thus, the nature of the intelligence business, including the compartmentation of records and the need to protect intelligence sources and methods, renders record searches complex and information reviews multiple and exacting.  These procedures, discussed above, are time-consuming, but essential in order to avoid the inadvertent disclosure of exempt information.

18.   In responding to FOIA requests, the overwhelming majority of the CIA redactions are based on FOIA Exemptions (b)(1) and (b)(3).  By definition, an error on the part of the CIA that leads to the disclosure of such exempt information would reveal information about intelligence collection, sources, methods, or capabilities and thereby could reasonably be expected to damage this country's national security.  Accordingly, the utmost care must be given to ensuring proper and thorough review of responsive documents before they are released to a FOIA requester.

## III. FACTORS AFFECTING CIA'S FOIA BACKLOG

19.   During the past ten years, the CIA has undertaken and continues to undertake numerous initiatives to reorganize its information review infrastructure,

implement technological improvements, and recruit, develop and retain skilled personnel to perform information review duties.  All of these initiatives have been aimed in part at reducing the CIA's backlog of pending FOIA requests. Indeed, as detailed below, these efforts have met with significant success.  From Fiscal Year (FY) 1999 to FY 2006, the CIA reduced its FOIA backlog on average about 15 percent annually.

20.  Because of such efforts, the CIA has been able to steadily and significantly reduce, though not entirely eliminate, its FOIA and PA backlog.  The reasons for this continued backlog are twofold:  (a) there has been a steady increase over the years in the number of information release demands being made on the CIA; and (b) the process of responding to FOIA and other declassification review requests in a manner which avoids inadvertent disclosure of classified information is necessarily time-consuming.

21.  The CIA's regulations provide for the processing of FOIA and PA requests on a first in, first out basis.  32 C.F.R. § 1900.34.  When the CIA receives a FOIA or PA request, it assigns it a reference number and places the request in a queue.  The CIA assigns a reference number to a request immediately upon receipt, even before the request is reviewed and formally accepted.  Using this

9

reference number, PIPD can then track the request from its arrival in IMS throughout CIA's processing.

22.   In accordance with the Agency's published FOIA regulations and the authorities provided by the E-FOIA Amendments of 1996, the Agency processes FOIA requests on a "first in first out" basis using "two or more processing queues to ensure that smaller and larger cases receive equitable attention."  This multi-track process allows the Agency to respond to relatively simple requests more quickly than requests involving complex and/or large amounts of information.  The first or complex, track contains the majority of requests and involves all requests that have to be tasked to one or more CIA directorates for search and review.  The second track contains those requests that concern previously requested information or information previously reviewed, declassified and released, or that seek information the existence of which would be a classified fact, if indeed such information existed.

23.   Plaintiff's request, which entails records searches within components of the Directorate of Intelligence, the independent offices known as the D/CIA area, and the National Clandestine Service (formerly the Directorate of Operations) as well as Information Management Services, will require the coordination with

multiple components, and therefore is properly placed in the complex track. Plaintiff's request could not be satisfied from previously released material.

IV.  **CIA'S EFFORTS TO IMPROVE ITS FOIA PROCESSING**

24.  The CIA has made significant efforts to improve its processing under the FOIA and other information statutes through continuous process improvements, technological advances, and various reorganizations. Through these efforts, the CIA was able to substantially reduce its FOIA and PA backlog during each of the last nine years.

25.  As mandated by the Electronic FOIA Amendments of 1996, CIA established a web site on the Internet located at www.foia.ucia.gov.  This site provides electronic access to frequently requested documents and educates the public about its rights under the various access laws.  As a result of increased availability of information on the Internet web site, including popular collections released under a number of information release efforts, the number of FOIA requests received can be expected to decline over time.  Consequently, CIA has increasingly focused on populating its FOIA web site as expeditiously as possible. Although the CIA was approximately two years behind in

posting documents at the beginning of FY 2006; by the end of FY 2006, we were essentially current.

26. The CIA's wide-ranging initiatives have enabled the Agency to significantly reduce its FOIA and PA backlog during each of the last nine years. Since the conclusion of FY 1997 when the backlog stood at 4,867 cases, CIA has steadily reduced its backlog to the point that at the conclusion of FY 2006, it had been reduced by over 80 percent to 896 cases. See Exhibit A.

27. In 2001, the General Accountability Office (GAO) prepared the first in a series of reports on the implementation of the 1996 amendments to FOIA. In its 2002 and 2004 reports, the GAO noted that the CIA was "the only agency with a processing rate over 100 percent in each year for fiscal years 1998, 1999, 2000, and 2001" and "the only agency that over the past 3 years [2000, 2001, and 2002] has consistently decreased the number of requests in its backlog of pending requests."

28. Most recently, in February 2007, the GAO's Director of Information Management Issues testified that the CIA was one of only two agencies during FY 2003-2005 that had "processing rates above 100 percent in all three years, meaning that each made continued progress in reducing their number of pending cases." See Exhibits B-1

and B-2.   In fact, the CIA has demonstrated steady

progress, reducing its backlog each of the last nine years.

29.   Moreover, the CIA has sought to reduce its FOIA

backlog by reducing not only the number of cases pending,

but the time it takes to process these cases as well.   The

CIA has steadily reduced the median numbers of days that

cases in the backlog have been pending at the end of each

fiscal year.   Of the 1866 cases in the backlog at the end

of FY 2001, the median number of days pending was 605 days

for FOIA requests and 215 days for Privacy requests.   At

the end of FY 2004, the median number of days pending for

the 1150 cases in the backlog had been reduced to 349 days

for FOIA requests and 127 days for Privacy requests.   At

the end of FY 2006, the median days of pendency for the 896

FOIA/PA cases carried over into FY 2007 was 234 and 74

days, respectively.

## V.   **PLAINTIFF'S FOIA REQUEST**

30.   By letter dated 15 February 2007, Anne L.

Weissman, on behalf of her client, Citizens for

Responsibility and Ethics in Washington ("CREW"), requested

the following records:

"any and all documents dating from July 6, 2003, to
the present of communications between the White House and
the CIA regarding Valerie Plame Wilson and/or Joseph C.
Wilson.   As used herein, the term 'White House' includes,
but is not limited to, any office within the Executive

13

Office of the President. Further the request for communications concerning Valerie Plame Wilson includes, but is not limited to, communications concerning Valerie Plame, Valerie Wilson, and/or Valerie Plame Wilson."

A true and correct copy of Plaintiff's 15 February 2007 letter is attached as Exhibit C hereto.

31. By letter dated 27 February 2007, I acknowledged receipt of CREW's request and assigned it reference number F-2007-00839. My letter then informed plaintiff's attorney, "You have requested expedited processing. We handle all requests in the order we receive them: that is, 'first-in, first out.' We make exceptions to this rule only when a requester establishes a compelling need under the standards in our regulations. A 'compelling need' exists: 1) when the matter involves an imminent threat to the life or physical safety of an individual, or 2) when a person primarily engaged in disseminating information makes the request and the information is relevant to a subject of public urgency concerning an actual or alleged Federal government activity." I then stated, "Your request does not demonstrate a 'compelling need' under these criteria and, therefore, we deny your request for expedited processing." A true and correct copy of my 27 February 2007 letter is attached as Exhibit D hereto.

32. By letter dated 13 March 2007, I accepted CREW's request for information and stated, ". . .[we] will process it according to the FOIA, 5 U.S.C. § 552, and the CIA Information Act, 50 U.S.C. § 431, as amended. Unless you object, we will limit our search to CIA-originated records existing through the date of this acceptance letter." I also stated, "No fees will be charged as a matter of administrative discretion," and that "[t]he large number of FOIA requests CIA received has created unavoidable delays making it unlikely that we can respond within the 20 working days the FOIA requires. You have the right to consider our honest appraisal as a denial of your request and you may appeal to the Agency Release Panel". A true and correct copy of my 13 March 2007 letter is attached as Exhibit E hereto.

33. The plaintiff did not contact my office to work out an alternative timetable for processing its request or communicate an objection to the timetable I described in my 13 March 2007 letter. Also, the Plaintiff did not appeal the timetable decision I described in my 13 March 2007 letter to the Agency Release Panel.

34. On 2 April 2007, plaintiff filed a Complaint for Declaratory Judgment and Injunctive Relief.

## VI.   CIA'S ESTIMATED TIME FOR COMPLETION OF
## PLAINTIFF'S FOIA REQUEST

35.   The CIA has treated plaintiff's FOIA request as having been accepted on the date on which the request was received by CIA's FOIA office--15 February 2007.  At that time, the Agency had over 907 FOIA requests in various stages of processing; of these, approximately 573 currently remain ahead of plaintiff's request in the complex queue.

36.   Plaintiff's request is particularly complex because the request involves CIA's communications with the White House.  In order to locate responsive records, CIA officers must search the National Clandestine Service and several Directorates, including the DI and the collective areas known as the DCIA.

37.   The CIA is making all reasonable efforts to comply with the FOIA's requirements and deadlines. Regrettably, compliance with these deadlines is not always possible.  The most equitable way to reduce the cases on hand and ensure that each request receives the attention it deserves is to process these requests pursuant to the first in/first out system described in paragraph 30 above.  Based upon the request, the manner and level of the records search, the nature of potentially responsive documents, and the careful, multi-step review the CIA must conduct to

prevent the inadvertent release of classified national security or other exempt information, and relative placement in the processing queue, my best estimate is that CIA will be able to complete processing this request by October 2007 – a date consistent with the Agency's median days of pendency (234 days) for FOIA cases carried over from FY 2006 into FY 2007.

38. For the above reasons, the CIA submits this declaration in support of its request for a stay of the proceedings to allow the CIA to process plaintiff's request in accordance with applicable law and regulations and in an orderly, fair manner.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this  13th  day of July, 2007.


Scott A. Koch, PhD.
Chief, Public Information Programs Division,
Office of the Chief Information Officer
Central Intelligence Agency

17

# EXHIBIT A



CIA FOIA and Privacy Act
Cases Backlog
(FY 1997 - FY 2006)

**EXHIBIT B**



Trends in Backlog of Pending Requests—Agency Processing Rate

Source: FOIA annual reports for fiscal years 2000-2002 (self-reported data).

GAO-04-257 Information Management

U.S. General Accounting Office, *Information Management: Update on Freedom of Information Act Implementation Status*, 36 (Washington, D.C.: February 2004).

Trends in Backlog of Pending Requests—Agency Processing Rate



Figure 6: Agency Processing Rate for 25 Agencies

Notes: Abbreviations are as in table 2.

The agency processing rate is defined as the number of requests processed in a given year compared with the requests received, expressed as a percentage.

In 2002, FEMA data were used, and for 2003, 2004, and 2005, DHS data were used.

GAO-07-491T

U.S. General Accountability Office, FOIA Processing Trends Show Importance of Improvement Plans, 31 (Washington, D.C.: February 2007).

**EXHIBIT C**

# CREW | citizens for responsibility and ethics in washington

F-2007-00839

February 15, 2007

**By fax and first-class mail**

Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C. 20505

2007 FEB 21   AM 10: 49

### Re: Freedom of Information Act Request

Dear Sir/Madam:

Citizens for Responsibility and Ethics in Washington ("CREW") makes this request for records, regardless of format, medium, or physical characteristics, and including electronic records and information, audiotapes, videotapes and photographs, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, et seq. and Central Intelligence Agency ("CIA") regulations, 32 C.F.R. Part 1900.

Specifically, CREW seeks any and all documents dating from July 6, 2003, to the present of communications between the White House and the CIA regarding Valerie Plame Wilson and/or Joseph C. Wilson. As used herein, the term "White House" includes, but is not limited to, any office within the Executive Office of the President. Further, the request for communications concerning Valerie Plame Wilson includes, but is not limited to, communications concerning Valerie Plame, Valerie Wilson, and/or Valerie Plame Wilson.

Please search responsive records regardless of format, medium, or physical characteristics. Where possible, please produce records electronically, in PDF or TIF format on a CD-ROM. We seek records of any kind, including electronic records, audiotapes, videotapes, and photographs. Our request includes any telephone messages, voice mail messages, daily agenda and calendars, information about scheduled meetings and/or discussions, whether in-person or over the telephone, agendas for those meetings and/or discussions, participants included in those meetings and/or discussions, minutes of any such meetings and/or discussions, the topics discussed at those meetings and/or discussions, e-mail regarding meetings and/or discussions, e-mail or facsimiles sent as a result of those meetings and/or discussions, and transcripts or notes of any such meetings and/or discussions.

If it is your position that any portion of the requested records is exempt from disclosure, CREW requests that you provide it with an index of those documents as required under Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1972). As you are aware, a Vaughn index must describe each document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA." Founding Church of Scientology v. Bell, 603 F.2d 945, 949 (D.C. Cir. 1979). Moreover, the

Vaughn index must "describe each document or portion thereof withheld, and for **each** withholding it must discuss the consequences of supplying the sought-after information." King v. U.S. Dep't of Justice, 830 F.2d 210, 223-24 (D.C. Cir. 1987) (emphasis added). Further, "the withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'" Id. at 224 (citing Mead Data Central v. U.S. Dep't of the Air Force, 566 F.2d 242, 251 (D.C. Cir. 1977).

In the event that some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. See 5 U.S.C. § 552(b). If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document. Mead Data Central, 566 F.2d at 261. Claims of nonsegregability must be made with the same degree of detail as required for claims of exemptions in a Vaughn index. If a request is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

## Fee Waiver Request

In accordance with 5 U.S.C. § 552(a)(4)(A)(iii), CREW requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government and expenditures, and the disclosures will likely contribute to a better understanding of relevant government procedures by CREW and the general public in a significant way. Moreover, the request is primarily and fundamentally for non-commercial purposes. 5 U.S.C. §552(a)(4)(A)(iii). See, e.g., McClellan Ecological v. Carlucci, 835 F.2d 1282, 1285 (9th Cir. 1987). Specifically, these records are likely to contribute to the public's understanding of the extent to which the CIA was influenced in its treatment of Valerie Plame Wilson by the White House following public disclosure of Mr. Wilson's findings during a February 2002 trip he took to Niger.

CREW is a non-profit corporation, organized under section 501(c)(3) of the Internal Revenue code. CREW is committed to the protection of the citizen's right to be aware of the activities of government officials and to ensuring the integrity of those officials. CREW is dedicated to empowering citizens to have an influential voice in government decisions and in the government decision-making process. CREW uses a combination of research, litigation, and advocacy to advance its mission. The release of information garnered through this request is not in CREW's financial interest. CREW will analyze the information responsive to this request, and will likely share its analysis with the public, either through memorandums, reports or press releases. In addition, CREW will disseminate any documents it acquires from this request to the public. CREW has established an interactive website where members of the public can analyze and comment on public documents, including documents CREW acquires through the FOIA. See http://foia.citizensforethics.org/home. Currently, CREW's website contains links to

2

thousands of pages of documents CREW acquired from multiple FOIA requests. CREW's website, www.citizensforethics.org, also includes documents relating to CREW's FOIA litigation, Internal Revenue complaints, and Federal Election Commission complaints. As CREW's website demonstrates, CREW has an established history of acquiring documents through the FOIA and publishing them on its website for public use.

Under these circumstances, CREW fully satisfied the criteria for a fee waiver.

## Conclusion

Please respond to this request in writing within an expedited time-frame. If all of the requested documents are not available within that time period, CREW requests that you provide all requested documents or portions of documents which are available within that time period.

If you have any questions about this request or foresee any problems in releasing fully the requested records within the twenty-day period, please contact me at (202) 408-5565. Also, if CREW's request for a fee waiver is not granted in full, please contact our office immediately upon making such determination. Please send the requested documents to Anne L. Weismann, Citizens for Responsibility and Ethics in Washington, 1400 Eye Street, N.W., Suite 450, Washington, D.C. 20005.

Sincerely,

ANNE L. WEISMANN
Chief Counsel

3

CREW | citizens for responsibility
and ethics in washington

1400 Eye Street, N.W.
Suite 450
Washington, D.C. 20005

Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C. 20505



UNITED STATES POSTAGE
PITNEY BOWES
$ 000.39°
02 1P
0002629848    FEB 16 2007
MAILED FROM ZIP CODE 20005

FEB 2 0 2007

**EXHIBIT D**



Central Intelligence Agency

Washington, D.C. 20505

FEB 2 7 2007

Anne L. Weismann, Esq.
Chief Counsel
CREW
1400 Eye Street, N.W., Suite 450
Washington, D.C. 20005

Dear Ms. Weismann:

The office of the Information and Privacy Coordinator has received your 15 February 2007 Freedom of Information Act request. Our officers will review it, and will advise you should they encounter any problems or if they cannot begin the search without additional information.

You have requested expedited processing. We handle all requests in the order we receive them: that is, "first-in, first-out." We make exceptions to this rule only when a requester establishes a compelling need under the standards in our regulations. A "compelling need" exists: 1) when the matter involves an imminent threat to the life or physical safety of an individual, or 2) when a person primarily engaged in disseminating information makes the request and the information is relevant to a subject of public urgency concerning an actual or alleged Federal government activity. Your request does not demonstrate a "compelling need" under these criteria and, therefore, we deny your request for expedited processing.

We have assigned your request Reference No. F-2007-00839. Please use this number when corresponding with us about this request so that we can identify it easily.

Sincerely,

Scott Koch
Information and Privacy Coordinator

**EXHIBIT E**



Central Intelligence Agency

Washington, D.C. 20505

MAR 1 3 2007

Anne L. Weismann, Esq.
Chief Counsel
CREW
1400 Eye Street, N.W., Suite 450
Washington, D.C. 20005

Reference: F-2007-00839

Dear Ms. Weismann:

This is further to our letter of 27 February 2007 and concerns your 15 February 2007 Freedom of Information Act (FOIA) request for:

> **"any and all documents dating from July 6, 2003, to the present of communications between the White House and the CIA regarding Valerie Plame Wilson and/or Joseph C. Wilson."**

We accept your request and will process it according to the FOIA, 5 U.S.C. § 552, as amended, and the CIA Information Act, 50 U.S.C. § 431, as amended. Unless you object, we will limit our search to CIA-originated records existing through the date of this acceptance letter. No fees will be charged as a matter of administrative discretion.

The large number of FOIA requests CIA receives has created unavoidable delays making it unlikely that we can respond within the 20 working days the FOIA requires. You have the right to consider our honest appraisal as a denial of your request and you may appeal to the Agency Release Panel. A more practical approach would permit us to continue processing your request and respond to you as soon as we can. You will retain your appeal rights and, once you receive the results of our search, can appeal at that time if you wish. We will proceed on that basis unless you object.

Sincerely,

Scott Koch
Information and Privacy Coordinator