UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 1:07CV00620-RMC |
| CENTRAL INTELLIGENCE AGENCY | ) ) | |
| Defendant. | ) ) | |

DECLARATION OF SCOTT A. KOCH
CHIEF, PUBLIC INFORMATION PROGRAMS DIVISION
CENTRAL INTELLIGENCE AGENCY

I, SCOTT A. KOCH, hereby declare and say:

1. I am the Chief, Public Information Programs Division (PIPD), Office of the Chief Information Officer, Central Intelligence Agency (CIA). I am also the CIA Information and Privacy Coordinator (Coordinator). I have held these positions since 9 August 2004.

2. I have served with the United States Government for approximately sixteen years and, in addition to my current positions, have held other supervisory positions with the CIA in the fields of records management and information review and release.

Dockets.Justia.com

3.  In my capacities as Chief of PIPD/IMS and Coordinator, I am responsible for managing the Freedom of Information Act (FOIA), Privacy Act, and Executive Order 12958 Mandatory Declassification Review programs in the CIA.  These responsibilities include directing searches of CIA records systems pursuant to public requests for records under these programs, and coordinating the reviews of any records retrieved in such searches.  These review processes include undertaking any intra-agency and inter-agency coordination and referrals necessary in light of the information found in responsive records.

4.  As part of my official duties, I ensure that the CIA administratively processes FOIA and Privacy Act requests, including the search, retrieval, analysis, review, redaction, and release of documents, in accordance with the law and as efficiently as possible with the personnel and resources available.

5.  Through the exercise of my official duties, I am familiar with plaintiff's request for information that is the subject of this civil action.  I make the following statements based upon my personal knowledge and the information made available to me in my official capacity.

2

6.   The purpose of this declaration is to provide a description of the CIA's process for responding to FOIA/PA requests and to explain the CIA's need for a reasonable adequate time to process the request.  I will include in my explanation the additional administrative burdens imposed by the nature of both the records systems involved and the information at issue, the necessity of referring records to various CIA components as well as to other agencies to ensure that no classified information, intelligence sources and methods, or otherwise exempt information is inadvertently disclosed, and the status of plaintiff's request vis-à-vis other pending FOIA requests.

## I.   CIA RECORDS SYSTEMS

7.   Any intelligence or security agency continually faces the risk that there may be a spy within its ranks or that it may be subject to hostile penetration.  Prudence dictates that an agency take appropriate counterintelligence and security precautions to minimize the potential damage to national security that could result from a spy in the agency's midst or the compromise of its information systems by technical means.  The CIA implements this policy by decentralizing and compartmenting its records systems.  Records within the CIA are maintained by

the National Clandestine Service, the Directorate of
Intelligence, the Directorate of Science & Technology, the
Directorate of Support, and the independent offices which
report directly to the Director, CIA, collectively known as
the D/CIA area.

8.    Another way the CIA seeks to minimize such damage
is strictly to limit the amount of information to which any
particular employee has access.  The CIA limits employee
access to information by employing a "need-to-know" policy,
which provides that an employee has access only to that
information required to perform the employee's duties.

9.    While the counterintelligence advantage of
decentralization and compartmentation are obvious, one
disadvantage is equally obvious:    inherent inefficiencies
created in the records search and retrieval processes.
These inefficiencies affect not only the day-to-day
activities of CIA employees trying to perform their
mission, but also the process of responding to FOIA/Privacy
Act requests.

II.    **PROCESSING OF FOIA/PRIVACY ACT REQUESTS**

10.    The CIA Information and Privacy Coordinator, in
the office of Information Management Services, is the
initial reception point for all FOIA/Privacy Act requests.
Under the Coordinator's direction and supervision, FOIA

4

case officers review all incoming requests and address any administrative issues, such as the payment of applicable fees, requests for fee waivers or expedited treatment, and determine whether the request reasonably describes the information sought.

11.    Experienced information management professionals in PIPD analyze each request and determine which CIA components might reasonably be expected to possess records responsive to a particular request.  PIPD then tasks the request to each relevant directorate.  Frequently, PIPD tasks the request to multiple directorates.  Because CIA's records systems are decentralized and compartmented, each directorate must then devise its own search strategy, which includes identifying which of its components and records systems to search as well as what search tools, indices, and terms to employ.  The information management professionals in each component conducting FOIA/Privacy Act searches are the same professionals searching records to support the component's daily intelligence mission.

12.    When a component locates potentially responsive documents, officers must review them to determine whether they are in fact responsive to the request.  Because of the nature of a particular records system, or the search tools, indices, or terms employed, a search may locate many

documents that are not responsive to the request. In fact,
it is not unusual for the number of non-responsive
documents retrieved to far exceed the number of responsive
documents.

13.  The component must then carefully review those
records that are responsive line-by-line to identify any
information which is classified, pertains to intelligence
sources or methods, or is otherwise exempt under the FOIA,
and to ensure that nonexempt information is released if it
is reasonably segregable. As part of this process, the
reviewers must further determine whether information
identified as classified still requires protection in the
interests of national security or is such that it can be
declassified and released. Thus, in evaluating responsive
documents, officers must identify and segregate exempt
information to avoid the inadvertent disclosure of
classified information or compromising intelligence sources
and methods. The process is laborious and time consuming.

14.  In the course of reviewing documents for exempt
information and segregability, a component frequently
identifies information that it must coordinate with or
refer to another CIA component or another agency because
the other component or agency originated the information or
otherwise has an equity in it. This coordination and

referral process itself can be quite time-consuming because
other components and agencies have their own mission and
FOIA/Privacy Act priorities.

15.  When all of the components (and agencies, if
information is in coordination) complete their respective
reviews, professionals in my office incorporate all of
their recommendations regarding exemption, segregation, and
release.  My office then conducts a review from a corporate
perspective on behalf of CIA.  In this review, we resolve
conflicting recommendations, ensure that the release or
withholding determinations comply with law, produce the
integrated final record copy of each document, and respond
to the requestor.

16.  During the corporate review, we may make
significant changes to initial decisions releasing or
withholding information.  In response to a broad
FOIA/Privacy Act request, the searches may locate many
documents in many components.  When considered
individually, a particular document may not indicate on its
face that it contains exempt information.  Nevertheless,
when reviewers consider all responsive documents in total,
it frequently becomes apparent that, considered
collectively, the documents reveal information exempt from
release.  For this reason, we cannot make final release

7

determinations with respect to any particular document until we review all responsive documents.

17.    Thus, the nature of the intelligence business, including the compartmentation of records and the need to protect intelligence sources and methods, renders record searches complex and information reviews multiple and exacting.  These procedures, discussed above, are time-consuming, but essential in order to avoid the inadvertent disclosure of exempt information.

18.    In responding to FOIA requests, the overwhelming majority of the CIA redactions are based on FOIA Exemptions (b)(1) and (b)(3).  By definition, an error on the part of the CIA that leads to the disclosure of such exempt information would reveal information about intelligence collection, sources, methods, or capabilities and thereby could reasonably be expected to damage this country's national security.  Accordingly, the utmost care must be given to ensuring proper and thorough review of responsive documents before they are released to a FOIA requester.

III. **FACTORS AFFECTING CIA'S FOIA BACKLOG**

19.    During the past ten years, the CIA has undertaken and continues to undertake numerous initiatives to reorganize its information review infrastructure,

8

implement technological improvements, and recruit, develop and retain skilled personnel to perform information review duties.  All of these initiatives have been aimed in part at reducing the CIA's backlog of pending FOIA requests. Indeed, as detailed below, these efforts have met with significant success.  From Fiscal Year (FY) 1999 to FY 2006, the CIA reduced its FOIA backlog on average about 15 percent annually.

20.  Because of such efforts, the CIA has been able to steadily and significantly reduce, though not entirely eliminate, its FOIA and PA backlog.  The reasons for this continued backlog are twofold:  (a) there has been a steady increase over the years in the number of information release demands being made on the CIA; and (b) the process of responding to FOIA and other declassification review requests in a manner which avoids inadvertent disclosure of classified information is necessarily time-consuming.

21.  The CIA's regulations provide for the processing of FOIA and PA requests on a first in, first out basis.  32 C.F.R. § 1900.34.  When the CIA receives a FOIA or PA request, it assigns it a reference number and places the request in a queue.  The CIA assigns a reference number to a request immediately upon receipt, even before the request is reviewed and formally accepted.  Using this

reference number, PIPD can then track the request from its arrival in IMS throughout CIA's processing.

22.  In accordance with the Agency's published FOIA regulations and the authorities provided by the E-FOIA Amendments of 1996, the Agency processes FOIA requests on a "first in first out" basis using "two or more processing queues to ensure that smaller and larger cases receive equitable attention." This multi-track process allows the Agency to respond to relatively simple requests more quickly than requests involving complex and/or large amounts of information. The first or complex, track contains the majority of requests and involves all requests that have to be tasked to one or more CIA directorates for search and review. The second track contains those requests that concern previously requested information or information previously reviewed, declassified and released, or that seek information the existence of which would be a classified fact, if indeed such information existed.

23.  Plaintiff's request, which entails records searches within components of the Directorate of Intelligence, the independent offices known as the D/CIA area, and the National Clandestine Service (formerly the Directorate of Operations) as well as Information Management Services, will require the coordination with

multiple components, and therefore is properly placed in
the complex track. Plaintiff's request could not be
satisfied from previously released material.

IV.  CIA'S EFFORTS TO IMPROVE ITS FOIA PROCESSING

24.  The CIA has made significant efforts to improve
its processing under the FOIA and other information
statutes through continuous process improvements,
technological advances, and various reorganizations.
Through these efforts, the CIA was able to substantially
reduce its FOIA and PA backlog during each of the last nine
years.

25.  As mandated by the Electronic FOIA Amendments of
1996, CIA established a web site on the Internet located at
www.foia.ucia.gov.  This site provides electronic access to
frequently requested documents and educates the public
about its rights under the various access laws.  As a
result of increased availability of information on the
Internet web site, including popular collections released
under a number of information release efforts, the number
of FOIA requests received can be expected to decline over
time.  Consequently, CIA has increasingly focused on
populating its FOIA web site as expeditiously as possible.
Although the CIA was approximately two years behind in

posting documents at the beginning of FY 2006; by the end
of FY 2006, we were essentially current.

26.  The CIA's wide-ranging initiatives have enabled
the Agency to significantly reduce its FOIA and PA backlog
during each of the last nine years.  Since the conclusion
of FY 1997 when the backlog stood at 4,867 cases, CIA has
steadily reduced its backlog to the point that at the
conclusion of FY 2006, it had been reduced by over 80
percent to 896 cases.  See Exhibit A.

27.  In 2001, the General Accountability Office (GAO)
prepared the first in a series of reports on the
implementation of the 1996 amendments to FOIA.  In its
2002 and 2004 reports, the GAO noted that the CIA was "the
only agency with a processing rate over 100 percent in each
year for fiscal years 1998, 1999, 2000, and 2001" and "the
only agency that over the past 3 years [2000, 2001, and
2002] has consistently decreased the number of requests in
its backlog of pending requests."

28.  Most recently, in February 2007, the GAO's
Director of Information Management Issues testified that
the CIA was one of only two agencies during FY 2003-2005
that had "processing rates above 100 percent in all three
years, meaning that each made continued progress in
reducing their number of pending cases."  See Exhibits B-1

and B-2.  In fact, the CIA has demonstrated steady

progress, reducing its backlog each of the last nine years.

29.  Moreover, the CIA has sought to reduce its FOIA

backlog by reducing not only the number of cases pending,

but the time it takes to process these cases as well.  The

CIA has steadily reduced the median numbers of days that

cases in the backlog have been pending at the end of each

fiscal year.  Of the 1866 cases in the backlog at the end

of FY 2001, the median number of days pending was 605 days

for FOIA requests and 215 days for Privacy requests.  At

the end of FY 2004, the median number of days pending for

the 1150 cases in the backlog had been reduced to 349 days

for FOIA requests and 127 days for Privacy requests.  At

the end of FY 2006, the median days of pendency for the 896

FOIA/PA cases carried over into FY 2007 was 234 and 74

days, respectively.

## V.    PLAINTIFF'S FOIA REQUEST

30.  By letter dated 15 February 2007, Anne L.

Weissman, on behalf of her client, Citizens for

Responsibility and Ethics in Washington ("CREW"), requested

the following records:

"any and all documents dating from July 6, 2003, to
the present of communications between the White House and
the CIA regarding Valerie Plame Wilson and/or Joseph C.
Wilson.  As used herein, the term 'White House' includes,
but is not limited to, any office within the Executive

Office of the President. Further the request for communications concerning Valerie Plame Wilson includes, but is not limited to, communications concerning Valerie Plame, Valerie Wilson, and/or Valerie Plame Wilson."

A true and correct copy of Plaintiff's 15 February 2007 letter is attached as Exhibit C hereto.

31. By letter dated 27 February 2007, I acknowledged receipt of CREW's request and assigned it reference number F-2007-00839. My letter then informed plaintiff's attorney, "You have requested expedited processing. We handle all requests in the order we receive them: that is, 'first-in, first out.' We make exceptions to this rule only when a requester establishes a compelling need under the standards in our regulations. A 'compelling need' exists: 1) when the matter involves an imminent threat to the life or physical safety of an individual, or 2) when a person primarily engaged in disseminating information makes the request and the information is relevant to a subject of public urgency concerning an actual or alleged Federal government activity." I then stated, "Your request does not demonstrate a 'compelling need' under these criteria and, therefore, we deny your request for expedited processing." A true and correct copy of my 27 February 2007 letter is attached as Exhibit D hereto.

32.  By letter dated 13 March 2007, I accepted CREW's request for information and stated, ". . .[we] will process it according to the FOIA, 5 U.S.C. § 552, and the CIA Information Act, 50 U.S.C. § 431, as amended.  Unless you object, we will limit our search to CIA-originated records existing through the date of this acceptance letter."  I also stated, "No fees will be charged as a matter of administrative discretion," and that "[t]he large number of FOIA requests CIA received has created unavoidable delays making it unlikely that we can respond within the 20 working days the FOIA requires.  You have the right to consider our honest appraisal as a denial of your request and you may appeal to the Agency Release Panel".  A true and correct copy of my 13 March 2007 letter is attached as Exhibit E hereto.

33.  The plaintiff did not contact my office to work out an alternative timetable for processing its request or communicate an objection to the timetable I described in my 13 March 2007 letter.  Also, the Plaintiff did not appeal the timetable decision I described in my 13 March 2007 letter to the Agency Release Panel.

34.  On 2 April 2007, plaintiff filed a Complaint for Declaratory Judgment and Injunctive Relief.

## VI.  CIA'S ESTIMATED TIME FOR COMPLETION OF
##     PLAINTIFF'S FOIA REQUEST

35.  The CIA has treated plaintiff's FOIA request as having been accepted on the date on which the request was received by CIA's FOIA office--15 February 2007.  At that time, the Agency had over 907 FOIA requests in various stages of processing; of these, approximately 573 currently remain ahead of plaintiff's request in the complex queue.

36.  Plaintiff's request is particularly complex because the request involves CIA's communications with the White House.  In order to locate responsive records, CIA officers must search the National Clandestine Service and several Directorates, including the DI and the collective areas known as the DCIA.

37.  The CIA is making all reasonable efforts to comply with the FOIA's requirements and deadlines. Regrettably, compliance with these deadlines is not always possible.  The most equitable way to reduce the cases on hand and ensure that each request receives the attention it deserves is to process these requests pursuant to the first in/first out system described in paragraph 30 above.  Based upon the request, the manner and level of the records search, the nature of potentially responsive documents, and the careful, multi-step review the CIA must conduct to

prevent the inadvertent release of classified national

security or other exempt information, and relative

placement in the processing queue, my best estimate is that

CIA will be able to complete processing this request by

October 2007 – a date consistent with the Agency's median

days of pendency (234 days) for FOIA cases carried over

from FY 2006 into FY 2007.

38.   For the above reasons, the CIA submits this

declaration in support of its request for a stay of the

proceedings to allow the CIA to process plaintiff's request

in accordance with applicable law and regulations and in an

orderly, fair manner.

I declare under penalty of perjury that the foregoing

is true and correct.

Executed this _13<u>th</u>_ day of July, 2007.


Scott A. Koch, PhD.
Chief, Public Information Programs Division,
Office of the Chief Information Officer
Central Intelligence Agency

17

**EXHIBIT A**



CIA FOIA and Privacy Act
Cases Backlog
(FY 1997 - FY 2006)

**EXHIBIT B**



Trends in Backlog of Pending Requests—Agency Processing Rate

Source: FOIA annual reports for fiscal years 2000-2002 (self-reported data).

GAO-04-257 Information Management

U.S. General Accounting Office, *Information Management: Update on Freedom of Information Act Implementation Status*, 36 (Washington, D.C.: February 2004).

Trends in Backlog of Pending Requests—Agency Processing Rate



Figure 6: Agency Processing Rate for 25 Agencies

Notes: Abbreviations are as in table 2.

The agency processing rate is defined as the number of requests processed in a given year compared with the requests received, expressed as a percentage.

In 2002, FEMA data were used, and for 2003, 2004, and 2005, DHS data were used.

GAO-07-491T

U.S. General Accountability Office, FOIA Processing Trends Show Importance of Improvement Plans, 31 (Washington, D.C.: February 2007).

**EXHIBIT C**

# CREW | citizens for responsibility and ethics in washington

F-2007-00839

February 15, 2007

**By fax and first-class mail**

Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C. 20505

2007 FEB 21  AM 10: 49

**Re: Freedom of Information Act Request**

Dear Sir/Madam:

Citizens for Responsibility and Ethics in Washington ("CREW") makes this request for records, regardless of format, medium, or physical characteristics, and including electronic records and information, audiotapes, videotapes and photographs, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, et seq. and Central Intelligence Agency ("CIA") regulations, 32 C.F.R. Part 1900.

Specifically, CREW seeks any and all documents dating from July 6, 2003, to the present of communications between the White House and the CIA regarding Valerie Plame Wilson and/or Joseph C. Wilson. As used herein, the term "White House" includes, but is not limited to, any office within the Executive Office of the President. Further, the request for communications concerning Valerie Plame Wilson includes, but is not limited to, communications concerning Valerie Plame, Valerie Wilson, and/or Valerie Plame Wilson.

Please search responsive records regardless of format, medium, or physical characteristics. Where possible, please produce records electronically, in PDF or TIF format on a CD-ROM. We seek records of any kind, including electronic records, audiotapes, videotapes, and photographs. Our request includes any telephone messages, voice mail messages, daily agenda and calendars, information about scheduled meetings and/or discussions, whether in-person or over the telephone, agendas for those meetings and/or discussions, participants included in those meetings and/or discussions, minutes of any such meetings and/or discussions, the topics discussed at those meetings and/or discussions, e-mail regarding meetings and/or discussions, e-mail or facsimiles sent as a result of those meetings and/or discussions, and transcripts or notes of any such meetings and/or discussions.

If it is your position that any portion of the requested records is exempt from disclosure, CREW requests that you provide it with an index of those documents as required under Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1972). As you are aware, a Vaughn index must describe each document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA." Founding Church of Scientology v. Bell, 603 F.2d 945, 949 (D.C. Cir. 1979). Moreover, the

Vaughn index must "describe each document or portion thereof withheld, and for **each** withholding it must discuss the consequences of supplying the sought-after information." King v. U.S. Dep't of Justice, 830 F.2d 210, 223-24 (D.C. Cir. 1987) (emphasis added). Further, "the withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'" Id. at 224 (citing Mead Data Central v. U.S. Dep't of the Air Force, 566 F.2d 242, 251 (D.C. Cir. 1977).

In the event that some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. See 5 U.S.C. § 552(b). If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document. Mead Data Central, 566 F.2d at 261. Claims of nonsegregability must be made with the same degree of detail as required for claims of exemptions in a Vaughn index. If a request is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

### Fee Waiver Request

In accordance with 5 U.S.C. § 552(a)(4)(A)(iii), CREW requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government and expenditures, and the disclosures will likely contribute to a better understanding of relevant government procedures by CREW and the general public in a significant way. Moreover, the request is primarily and fundamentally for non-commercial purposes. 5 U.S.C. §552(a)(4)(A)(iii). See, e.g., McClellan Ecological v. Carlucci, 835 F.2d 1282, 1285 (9th Cir. 1987). Specifically, these records are likely to contribute to the public's understanding of the extent to which the CIA was influenced in its treatment of Valerie Plame Wilson by the White House following public disclosure of Mr. Wilson's findings during a February 2002 trip he took to Niger.

CREW is a non-profit corporation, organized under section 501(c)(3) of the Internal Revenue code. CREW is committed to the protection of the citizen's right to be aware of the activities of government officials and to ensuring the integrity of those officials. CREW is dedicated to empowering citizens to have an influential voice in government decisions and in the government decision-making process. CREW uses a combination of research, litigation, and advocacy to advance its mission. The release of information garnered through this request is not in CREW's financial interest. CREW will analyze the information responsive to this request, and will likely share its analysis with the public, either through memorandums, reports or press releases. In addition, CREW will disseminate any documents it acquires from this request to the public. CREW has established an interactive website where members of the public can analyze and comment on public documents, including documents CREW acquires through the FOIA. See http://foia.citizensforethics.org/home. Currently, CREW's website contains links to

2

thousands of pages of documents CREW acquired from multiple FOIA requests. CREW's website, www.citizensforethics.org, also includes documents relating to CREW's FOIA litigation, Internal Revenue complaints, and Federal Election Commission complaints. As CREW's website demonstrates, CREW has an established history of acquiring documents through the FOIA and publishing them on its website for public use.

Under these circumstances, CREW fully satisfied the criteria for a fee waiver.

## Conclusion

Please respond to this request in writing within an expedited time-frame. If all of the requested documents are not available within that time period, CREW requests that you provide all requested documents or portions of documents which are available within that time period.

If you have any questions about this request or foresee any problems in releasing fully the requested records within the twenty-day period, please contact me at (202) 408-5565. Also, if CREW's request for a fee waiver is not granted in full, please contact our office immediately upon making such determination. Please send the requested documents to Anne L. Weismann, Citizens for Responsibility and Ethics in Washington, 1400 Eye Street, N.W., Suite 450, Washington, D.C. 20005.

Sincerely,

ANNE L. WEISMANN
Chief Counsel

3

# CREW | citizens for responsibility and ethics in washington

1400 Eye Street, N.W.
Suite 450
Washington, D.C. 20005

Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C. 20505



UNITED STATES POSTAGE
PITNEY BOWES
02 1P        $ 000.390
0002629848    FEB 16 2007
MAILED FROM ZIP CODE 20005

FEB 20 2007

**EXHIBIT D**



Central Intelligence Agency

Washington, D.C. 20505

FEB 2 7 2007

Anne L. Weismann, Esq.
Chief Counsel
CREW
1400 Eye Street, N.W., Suite 450
Washington, D.C. 20005

Dear Ms. Weismann:

The office of the Information and Privacy Coordinator has received your 15 February 2007 Freedom of Information Act request. Our officers will review it, and will advise you should they encounter any problems or if they cannot begin the search without additional information.

You have requested expedited processing. We handle all requests in the order we receive them: that is, "first-in, first-out." We make exceptions to this rule only when a requester establishes a compelling need under the standards in our regulations. A "compelling need" exists: 1) when the matter involves an imminent threat to the life or physical safety of an individual, or 2) when a person primarily engaged in disseminating information makes the request and the information is relevant to a subject of public urgency concerning an actual or alleged Federal government activity. Your request does not demonstrate a "compelling need" under these criteria and, therefore, we deny your request for expedited processing.

We have assigned your request Reference No. F-2007-00839. Please use this number when corresponding with us about this request so that we can identify it easily.

Sincerely,

Scott Koch
Information and Privacy Coordinator

**EXHIBIT E**

J



Central Intelligence Agency

Washington, D.C. 20505

MAR 1 3 2007

Anne L. Weismann, Esq.
Chief Counsel
CREW
1400 Eye Street, N.W., Suite 450
Washington, D.C. 20005

Reference: F-2007-00839

Dear Ms. Weismann:

This is further to our letter of 27 February 2007 and concerns your 15 February 2007 Freedom of Information Act (FOIA) request for:

> **"any and all documents dating from July 6, 2003, to the present of communications between the White House and the CIA regarding Valerie Plame Wilson and/or Joseph C. Wilson."**

We accept your request and will process it according to the FOIA, 5 U.S.C. § 552, as amended, and the CIA Information Act, 50 U.S.C. § 431, as amended. Unless you object, we will limit our search to CIA-originated records existing through the date of this acceptance letter. No fees will be charged as a matter of administrative discretion.

The large number of FOIA requests CIA receives has created unavoidable delays making it unlikely that we can respond within the 20 working days the FOIA requires. You have the right to consider our honest appraisal as a denial of your request and you may appeal to the Agency Release Panel. A more practical approach would permit us to continue processing your request and respond to you as soon as we can. You will retain your appeal rights and, once you receive the results of our search, can appeal at that time if you wish. We will proceed on that basis unless you object.

Sincerely,

Scott Koch
Information and Privacy Coordinator