UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND )
ETHICS IN WASHINGTON )
1400 Eye Street, N.W., Suite 450 )
Washington, DC 20005 )
                                                          )
      Plaintiff, )
                                                          )   Case No. 1:07CV00620-RMC
      v. )
                                                          )
CENTRAL INTELLIGENCE AGENCY )
Washington, DC 20505 )
                                                          )
      Defendant. )
                                                          )

**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR *OPEN AMERICA* STAY**

**INTRODUCTION**

       Plaintiffs do not dispute that the Central Intelligence Agency ("CIA") processes Freedom of Information Act ("FOIA") requests on a first-in, first-out basis, or that there are over 500 FOIA requests ahead of Plaintiff's February 15, 2007 request, or that the median number of days pending for FOIA requests submitted to the agency is 234 days (down from 349 days at the end of Fiscal Year 2004), or that Plaintiff's FOIA request will come up for processing in October 2007. Under case law from this Circuit, those facts – especially in combination with consideration of Plaintiff's conduct – more than demonstrate "exceptional circumstances" justifying the CIA's requested stay until November 1, 2007. Plaintiff's argument to the contrary is based on an irrelevant statistical comparison and a rationalization of its own conduct – neither sufficient to overcome that demonstration. Accordingly, the Court should grant this motion and stay this action until November 1, 2007.

## ARGUMENT

Plaintiff acknowledges that the applicable legal standard is as set forth in Defendant's Motion for *Open America* Stay. *Compare* Plaintiff's Response to Defendant's Motion for *Open America* Stay ("Pl. Resp.") at 4 *with* Defendant's Motion for *Open America* Stay ("Def. Mot.") at 5. Under that standard, the Court "may allow the agency additional time" to process Plaintiff's FOIA request if the CIA "demonstrates reasonable progress in reducing its backlog of pending requests."[1] *See* 5 U.S.C. § 552(a)(6)(C)(ii). Plaintiff does not dispute the operative facts demonstrating that the CIA satisfies that standard. *See* Koch Decl. ¶ 21 ("The CIA's regulations provide for the processing of FOIA . . . requests on a first in, first out basis"); *id.* ¶ 26 ("Since the conclusion of FY 1997 when the backlog stood at 4,867 cases, CIA has steadily reduced its backlog to the point that at the conclusion of FY 2006, it had been reduced by over 80 percent to 896 cases."); *id.* ¶ 29 ("The CIA has steadily reduced the median number of days that cases in the backlog have been pending at the end of each fiscal year."); *id.* ¶ 35 ("At th[e] time [Plaintiff's request was received], the Agency had over 907 FOIA requests in various stages of processing; of these, approximately 573 currently remain ahead of plaintiff's . . . ."); *id* ¶ 31 ("[Plaintiff's] request does not demonstrate a 'compelling need'" for which the CIA "make[s] exceptions to [its

---

[1] Plaintiff's Opposition does not even address the CIA's devotion of resources to declassification review, (Def. Mot. Ex. (Declaration of Scott Koch ("Koch Decl.")) ¶ 13), another factor relevant to this Court's determination. *See Center for Public Integrity v. United States Dept. of State*, 2006 WL 1073066, at * 2 (D.D.C., Apr. 24, 2006) (noting that "other circumstances in addition to FOIA request backlogs may be a basis for finding exceptional circumstances, including 'resources being devoted to the declassification of classified material of public interest'"); *Electronic Frontier Found. v. Department of Justice*, 2007 WL 1334973, at *4 (D.D.C., May 7, 2007) (concluding that FOIA's legislative history "clearly contemplate[s] that other circumstances, such as . . . the amount of classified material . . . [and] the resources being devoted to the declassification of classified material of public interest . . . are relevant to the courts' determination as to whether exceptional circumstances exist").

first-in, first-out] rule"). Instead, Plaintiff contends that a stay is not warranted because other agencies have larger FOIA dockets and Plaintiff's conduct should not be a factor in this Court's decision. That contention, however, is unfounded.

I. **THE FOIA DOCKETS OF OTHER FEDERAL AGENCIES ARE NOT RELEVANT TO THIS COURT'S DETERMINATION.**

Plaintiff urges denial of the stay based on a meaningless comparison of the relative sizes of agencies' FOIA dockets. *See* Pl. Resp. at 6 (noting that "as compared to 24 other agencies who reported to the GAO, the CIA had the eighth fewest number of FOIA requests"). Such a comparison is uninformative, at a minimum, because it does not account for differences in the records systems maintained by each agency. For example, as part of its counterintelligence function, the CIA maintains a decentralized and compartmentalized records system. *See* Koch Decl. ¶ 7 (explaining that "[p]rudence dictates that an agency take appropriate counterintelligence and security precautions to minimize the potential damage to national security that could result from a spy in the agency's midst or the compromise of its information systems by technical means[, a policy that t]he CIA implements . . . by decentralizing and compartmenting its records systems"). The CIA also "limits employee access to information by employing a 'need-to-know' policy, which provides that an employee has access only to that information required to perform the employee's duties." Koch Decl. ¶ 8. Although that system of organization has obvious "counterintelligence advantage[s]," "one disadvantage is . . . inherent inefficiencies created in the records search and retrieval processes." Koch Decl. ¶ 9. Thus, the CIA's FOIA processing necessarily will be more laborious than an agency with a centralized records system or without a counterintelligence mission.

The number of requests comprising an agency's FOIA docket, moreover, reveals nothing about the complexity of the search necessitated by a request.[2] "Plaintiff's request, which entails records searches within components of the Directorate of Intelligence, the independent offices known as the D/CIA area, and the National Clandestine Service (formerly the Directorate of Operations) as well as Information Management Services, will require the coordination with multiple components . . . ." Koch Decl. ¶ 23. Such coordination is "laborious and time consuming." Koch Decl. ¶ 13. Plaintiff's contrary claim is not only unsubstantiated but contradicted by the CIA's supporting declaration. *Compare* Pl. Resp. at 6 (suggesting that "because the volume of documents likely to be found in response to CREW's discrete FOIA request will be limited, it does not appear that CREW's FOIA request is an appropriate one for CIA's complex track") *with* Koch Decl. ¶¶ 11-14, 22, 37 (describing the difficulty of records searches across multiple directorates). Thus, that claim is insufficient to rebut the CIA's demonstration of exceptional circumstances. *See Electronic Frontier Foundation*, 2007 WL 1334973, at *4 ("When considering a request for an *Open America* stay, '[a]gency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims . . . .'").

---

[2] Plaintiff notes that a GAO study reported that "[t]he CIA's docket of FOIA requests received in Fiscal Year 2005 was 2,935, as compared to . . . DHS with 163,016 FOIA requests received." Pl. Resp. at 5 n.2. However, the vast majority of the DHS requests were submitted to the U.S. Citizenship & Immigration Services and therefore likely sought discrete files concerning a particular individual's immigration matter. *See* GAO Report at 65.

**II.   THE CIA HAS DEMONSTRATED DUE DILIGENCE IN PROCESSING FOIA REQUESTS ON A FIRST-IN, FIRST-OUT BASIS.**

Plaintiff contends that the CIA's adherence to a first-in, first-out system for processing FOIA requests does not excuse it "from the twenty-day timetable." Pl. Resp. at 7 (erroneously accusing the CIA of "creat[ing] its own set of FOIA regulations that allow it to process FOIA requests based on its 'as soon as we can' time-table"). In this Circuit, however, courts have interpreted the "exceptional circumstances" provision as "excusing any delays encountered in responding to a request as long as the agencies are making a good faith effort and exercising due diligence in processing the requests on a first-in first-out basis." *Kuffel v. United States Bureau of Prisons*, 882 F. Supp. 1116, 1127 (D.D.C. 1995); *see also Appleton v. Federal Drug Admin.*, 254 F. Supp. 2d 6, 9 (D.D.C. 2003) (same); *Jimenez v. Federal Bureau of Investigation*, 938 F. Supp. 21, 31 (D.D.C. 1996) (same). Tellingly, the only authority Plaintiff cites in support of its argument comes from outside this Circuit. *See* Pl. Resp. at 7 (citing *Fiduccia v. United States Department of Justice*, 185 F.3d 1035 (9th Cir. 1999)). That case, moreover, involved an *eight-year* stay and thus hardly demonstrates that the stay requested here is unwarranted. *See id.* at 1041 (vacating eight-year stay because "[t]elling the requester 'You'll get the documents 15, or eight, years from now' amounts as a practical matter in most cases to saying 'regardless of whether you are entitled to the documents, we will not give them to you'").

Here, in contrast, the CIA seeks only an additional three months from the date of this filing to process Plaintiff's FOIA request. The record certainly supports that length of stay. In each of the "last nine years," the CIA has reduced its backlog of FOIA requests. Koch Decl. ¶ 28. The CIA additionally has reduced "the time it takes to process the[m ] as well." Koch Decl.

5

¶ 29.  Over a five-year period, the CIA reduced the median days pending for FOIA requests from 605 days to its current level of 234 days.  *See* Koch Decl. ¶ 29.  At the time that Plaintiff's February 15, 2007 request was submitted, the CIA "had over 907 FOIA requests in various stages of processing; of these, approximately 573 [] remain ahead of [P]laintiff's request."  *See* Koch Decl. ¶ 35.  "Based upon the request, the manner and level of the records search, the nature of potentially responsive documents, and the careful, multi-step review the CIA must conduct to prevent the inadvertent release of classified national security or other exempt information, and relative placement in the processing queue, [the CIA's] best estimate is that [it] will be able to complete processing [Plaintiff's] request by October 2007."  Koch Decl. ¶ 37.  On these facts – none of which Plaintiff disputes – the requested stay is clearly warranted.

III. **PLAINTIFF'S RUSH TO COURT WITHOUT FIRST ATTEMPTING TO ARRANGE AN ALTERNATIVE TIMETABLE FOR PROCESSING ITS FOIA REQUEST IS A FACTOR SUPPORTING THE REQUESTED STAY.**

Plaintiff urges this Court to ignore Plaintiff's failure to arrange an alternative timetable for processing its FOIA request.  *See* Pl. Resp. at 7-9.  The FOIA, however, requires consideration of that conduct in determining whether exceptional circumstances exist.  *See* 5 U.S.C. § 552(a)(6)(C)(iii) ("Refusal by a person to reasonably modify the scope of a request or arrange an alternative time frame for processing a request (or a modified request) . . . after being given an opportunity to do so by the agency to whom the person made the request *shall be considered* as a factor in determining whether exceptional circumstances exist for purposes of this subparagraph." (emphasis added)).  Plaintiff cannot seriously dispute that it was afforded such an opportunity.  Indeed, evidence of such is attached as an exhibit to Plaintiff's Response.  *See* Pl. Resp. Ex. A (Letter to Anne L. Weismann from Scott Koch).  That letter advised Plaintiff

that it was "unlikely that we can respond within the 20 working days the FOIA requires," that the "more practical approach would permit us to continue processing your request and respond to you as soon as we can," and that "[w]e will proceed on that basis *unless you object*." *See* Pl. Resp. Ex. A (emphasis added). Plaintiff's next opportunity was the May 31, 2007 meet-and-confer during which "counsel discussed whether the parties could agree to the stay," but "Plaintiff's counsel indicated that plaintiff intends to oppose defendant's motion for a stay."[3] Joint Status Report (filed June 14, 2007). While completely ignoring the latter, Plaintiff offers only flimsy arguments for why the former did not constitute an opportunity to arrange an alternative time frame.

     Plaintiff erroneously suggests that the CIA's use of a letter template somehow negates the express language in the March 13, 2007 letter. *See* Pl. Resp. at 8. That letter, however, was addressed to CREW's chief counsel, described the information sought in Plaintiff's request, and therefore clearly directed CREW to communicate to the CIA any objection to its processing that request "as soon as we can." *See* Pl. Resp. at 8 (suggesting that, notwithstanding that language, the March 13, 2007 was "hardly an appeal to CREW to work with the CIA"). Incredibly, Plaintiff further suggests that, even if that language properly is deemed such appeal, Plaintiff could not avail itself of that opportunity because "the CIA's letter to CREW contained no telephone number or address for CREW to call or make an appeal for purposes of 'discussing the more practical approach.'" Pl. Resp. at 8. Yet, just weeks before receiving that letter, CREW

---

[3] Plaintiff arguably had a third opportunity after Defendant filed the instant motion and it became clear that the CIA was seeking a stay only until November 1, 2007. *See* Pl. Resp. at 7-8 (complaining that CREW was not "advise[ ] about [the CIA's] intention to fulfill CREW's FOIA request by October 2007").

successfully transmitted to the CIA by facsimile and first-class mail the FOIA request at issue here. *See* Compl. Ex. A. (Transmission Verification Report); Compl. Ex. B (Letter from Scott Koch to Anne Weismann) (acknowledging receipt of CREW's February 15, 2007 FOIA request). Thus, CREW's subsequent failure to contact the FOIA coordinator concerning the timetable for processing that request clearly cannot be attributed to the omission of his contact information from the March 13, 2007 letter. Rather, that failure is precisely the type of conduct that "shall be considered" in determining whether exceptional circumstances exists and that here, supports granting the requested stay. *See* 5 U.S.C. § 552(a)(6)(C)(iii).

### IV. PLAINTIFF'S ALTERNATIVE REQUEST FOR PRODUCTION ON A ROLLING BASIS "UP TO AND INCLUDING OCTOBER 2007" IS NOT PRACTICABLE.

Plaintiff's alternative suggestion of a rolling production ignores its request's proper place in the CIA's FOIA queue. Such a production would require the CIA to move Plaintiff's request to the front of the line. In the absence of a compelling need, the law does not require that. *See Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 610 (D.C. Cir. 1976) (noting that "[i]f everyone could go to court when his request had not been processed within thirty days, and by filing a court action automatically go to the head of the line at the agency, we would soon have a listing based on priority in filing lawsuits"); *Jimenez*, 938 F. Supp. at 32 (noting that a "plaintiff must wait his turn in having the requested documents processed and disclosed"); 32 C.F.R. § 1900.34.

Moreover, an earlier rolling production risks inadvertent disclosure of exempt information. *See* Koch Decl. ¶ 16. In conducting document searches for FOIA requests such as Plaintiff's, "reviewers consider all responsive documents in total." Koch Decl. ¶ 16. A

particular document "considered individually . . . may not indicate on its face that it contains exempt information;" however when "considered collectively," "it frequently becomes apparent that . . . the documents reveal information exempt from release." Koch Decl. ¶ 16. "[A]n error on the part of the CIA that leads to the disclosure of [] exempt information . . . could reasonably be expected to damage this country's national security." Koch Decl. ¶ 18. Consequently, the CIA "cannot make final release determinations with respect to any particular document until [it] review[s] all responsive documents." Koch Decl. ¶ 16. Plaintiff's belated alternative timetable is therefore simply not workable.

## CONCLUSION

For the foregoing reasons and those explained in Defendant's Motion for *Open America* Stay, Defendant respectfully requests that the Court grant this motion and stay this action until November 1, 2007 to allow the CIA sufficient time to process Plaintiff's FOIA request.

Dated: August 6, 2007                               Respectfully submitted,

                                                    PETER D. KEISLER
                                                    Assistant Attorney General,
                                                    Civil Division

                                                    JEFFREY A. TAYLOR
                                                    United States Attorney

                                                    JOHN R. TYLER
                                                    Senior Trial Counsel
                                                    Federal Programs Branch

                                                       /s/ Jacqueline Coleman Snead
                                                    JACQUELINE COLEMAN SNEAD
                                                    (D.C. Bar No. 459548)
                                                    Trial Attorney
                                                    United States Department of Justice
                                                    Civil Division, Federal Programs Branch

20 Massachusetts Avenue N.W., Room 7214
Washington, D.C.  20530
Tel.: (202) 514-3418
Fax: (202) 616-8470
Email: jacqueline.snead@usdoj.gov

**Attorneys for the Central Intelligence Agency**

**CERTIFICATE OF SERVICE**

     I hereby certify that on August 6, 2007, a true and correct copy of the foregoing Reply in Support of Defendant's Motion for *Open America* Stay was electronically filed through the U.S. District Court for the District of Columbia Electronic Document Filing System (ECF) and that the document is available for viewing on that system.

                                                 /s/ Jacqueline Coleman Snead
                                          JACQUELINE COLEMAN SNEAD